UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NIAGARA MOHAWK POWER CORPORATION,
d/b/a NATIONAL GRID,

                                Plaintiff,

    vs.                                  5:09-CV-00471

HUDSON RIVER-BLACK RIVER REGULATING
DISTRICT,

                                Defendant,

SACANDAGA PROTECTION CORPORATION,

                                Intervenor.
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| Hiscock & Barclay, L.L.P.<br>50 Beaver Street<br>Albany, New York 12207-2830<br>*Attorneys for Plaintiff* | Mark D. Lansing, Esq. |
| Crane, Parente & Cherubin<br>Regulating District<br>90 State Street, Suite 1515<br>Albany, New York 12207<br>*Attorneys for Defendant Hudson River-Black River<br> Regulating District* | David M. Cherubin, Esq. |
| Hodgson Russ LLP<br>The Guaranty Building<br>140 Pearl Street, Suite 100<br>Buffalo, New York 14202-4040<br>*Attorneys for Intervenor<br> Sacandaga Protection Corporation* | Daniel A. Spitzer, Esq.<br>Benjamin K. Ahlstrom, Esq. |

**Norman A. Mordue, Chief U.S. District Judge:**

## MEMORANDUM DECISION AND ORDER

### I.     INTRODUCTION

Plaintiff, National Grid, is a former hydroelectric power generating company which now

merely transmits and distributes energy resources, but still owns various undeveloped real estate

parcels along the Hudson River, Sacandaga River and Black River Basins.  This case involves

primarily plaintiff's claims against the Hudson River-Black River Regulating District, ("the

District") a New York state agency that regulates water flow in the basins of the Hudson,

Sacandaga, Black and Beaver Rivers and operates, *inter alia*, the Conklingville Dam and its

related body of water, Great Sacandaga Lake.  National Grid asserts that the District has been

assessing and apportioning "headwater benefit" charges to the public utility pursuant to New

York state environmental conservation law in violation of the federal preemption doctrine.

Presently pending before the Court is the District's motion for summary judgment.  National Grid

opposes this motion.  The intervening party, Sacandaga Protection Corporation ("SPC"), has filed

a brief in support of the District's motion for summary judgment.  Also pending before the Court

are cross motions by the parties to stay discovery and adjourn discovery deadlines pending this

Court's determination of the summary judgment motion.

## II.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

To reiterate, the relevant facts are these:  The District is a New York public benefit

corporation which was created in 1959 by legislation that combined the then-existing Hudson

River and Black River Regulating Districts.  *See* N.Y. ENVTL. CONSERV. LAW §§ 15-2137,

15-2139, 15-2141.[1]  The District's statutory mission is to regulate the flow of the Hudson and

Black Rivers "as required by the public welfare including health and safety."  N.Y. ENVTL.

CONSERV. LAW  §§ 15-2103(1), 15-2139(2).  In furtherance of this statutory directive, the

District, *inter alia*, builds and operates reservoirs, issues bonds and apportions costs on statutorily

defined beneficiaries to finance the construction, maintenance and operation of its river

regulating reservoirs. *See* N.Y. ENVTL. CONSERV. LAW  §§ 15-2103(1), 15-2109, 15-2111,

---

[1] The Hudson River Regulating District was originally formed in 1922 and the Black River Regulating District was originally formed in 1919.

15-2123, 15-2125, 15-2129, 15-2133.  The focal point of the District's operation in the Hudson River watershed is its ownership and operation of the Conklingville Dam and its related body of water, the Sacandaga Reservoir, now known as Great Sacandaga Lake.

Pursuant to N.Y. ENVTL. CONSERV. LAW § 15-2121, the District (and its predecessor) is required to apportion the cost of its capital, operation and maintenance costs for the facilities and property it owns through an annual assessment charged to all owners of property that are benefitted by its services.  The District (including its predecessor) has used the same method of apportionment to determine its annual assessments of costs continuously since its original adoption in 1925.  The District's method of apportionment for the Hudson River Area attributes approximately 95% of the project's benefits to parcels of property that have fall or "head" on the river, and which therefore derive, or potentially derive, the benefit of increased water power production – whether hydroelectric, industrial (e.g., mills), or merely potential (undeveloped). The remaining 5% is allocated to municipalities along the river for flood control, flow augmentation, and sanitary benefits such as wastewater assimilation.

The District enacts a three-year budget triennially, based on its estimates and determinations related to the cost of operating and maintaining the District's dams, reservoirs and other improvements. N.Y. ENVTL. CONSERV. LAW § 15-2125.[2]  The District issues annual assessments on July 1st of each year, covering the July 1st - June 30th fiscal year.  The assessments allocate a portion of the District's budget on "statutory beneficiaries" in proportion to their percentages set forth in the original 1925 Apportionment of Cost.  *See* N.Y. ENVTL. CONSERV. LAW §§ 15-2121,15-2123,15-2125.  Although at the time the original apportionment

---

[2] The District's funding comes from three revenue sources: 1) annual assessments charged to "statutory beneficiaries;" 2) permit fees charged for the use of state-owned lands in and around Great Sacandaga Lake; and 3) revenues from a hydroelectric site agreement with Erie Boulevard Hydropower, L.P. for the use of state-owned head and water rights at Conklingville Dam.

and assessment was rendered by the District, Niagara Mohawk, National Grid's predecessor, owned and operated hydroelectric power plants along the Hudson River, the company has since divested all of its power plant operations.  National Grid continues to own various parcels of land along the Hudson River which the District considers to be "developable" hydroelectric generation sites.  These sites are assessed by the District under its original 1925 apportionment method.

National Grid alleges that notwithstanding the District's practice of allocating 95% of its annual Apportionment of Cost to the hydroelectric projects which benefitted from its services and the other 5% to municipalities, various studies and consultants have advised the District over time that numerous unassessed, but benefitted parcels along the Hudson River and Great Sacandaga Lake are not paying the apportionments required by N.Y. ENVTL. CONSERV. LAW § 15-2121.  As stated rather succinctly by counsel for the New York State Department of Environmental Conservation in the agency's previous motion papers filed in connection with National Grid's motion for a preliminary injunction, it is undisputed that "circumstances have evolved" since 1925 "which arguably call for the District to revise its apportionment."  Indeed, the District retained a consulting firm, Gomez & Sullivan, in September 1999 to perform an independent Hudson River flow regulation study which revealed finally in July 2003, that there are seven categories of economically determinable benefits (flood protection, lake recreation, hydroelectric power generation, waste assimilation, whitewater recreation, navigation and lakeshore properties) by which the District's annual budget could or should be apportioned.

In September 2002, as part of obtaining a required license from the Federal Energy Regulatory Commission ("FERC") for the operation of the Conklingville Dam and Great Sacandaga Lake, the District entered into an Offer of Settlement with DEC, National Grid, and numerous other interested agencies, businesses and property owners which included, *inter alia*, an agreement by the District to conduct a reapportionment to update its assessment methodology.

4

Concurrent with the licensing order, FERC approved the Offer of Settlement.  To date, the District has not completed or even begun the agreed reapportionment effort.

National Grid timely grieved and challenged judicially the apportionments and assessments assigned to it by the District for fiscal years 2000 through 2010 related to real estate parcels it owns along the Hudson River and Sacandaga River Basins.  There are now 20 actions pending in New York State Supreme Court which challenge the Hudson River and Black River assessments on the grounds of both state law as well as violations of equal protection and due process under the New York State and federal constitutions.  The constitutional claims raised in the New York State Supreme Court actions are identical to those raised in the claims pending herein.

In June 2006, Albany Engineering Corporation, a FERC licensee in its capacity as owner and operator of the Mechanicville Hydroelectric Project, filed an administrative complaint with FERC contending that pursuant to the Federal Power Act ("FPA"), state agencies such as the District lack authority to assess Albany Engineering for the regulating benefits provided by the Conklingville Dam.  To wit, FPA § 10(f) provides as follows:

> f) Reimbursement by licensee of other licensees, etc.
>
> That whenever any licensee hereunder is directly benefited by the construction work of another licensee, a permittee, or of the United States of a storage reservoir or other headwater improvement, the Commission shall require as a condition of the license that the licensee so benefited shall reimburse the owner of such reservoir or other improvements for such part of the annual charges for interest, maintenance, and depreciation thereon as the Commission may deem equitable. The proportion of such charges to be paid by any licensee shall be determined by the Commission. . . .

16 U.S.C. § 803(f).  Further, § 27 of the FPA limits the state's regulation of matters **affecting** federally licensed power projects to matters of municipal use and irrigation:

5

> Nothing contained in this chapter shall be construed as affecting or intending to affect or in any way to interfere with the laws of the respective States relating to the control, appropriation, use, or distribution of water used in irrigation or for municipal or other uses, or any vested right acquired therein.

16 U.S.C. § 821.  Albany Engineering charged that the District's assessment and apportionment scheme, clearly outside the realm of laws merely controlling "irrigation" or "municipal" water use, violated the FPA in two ways- first, the District's annual assessments were not determined by FERC to be "equitable" and second, the District was imposing charges for its operations under N.Y. ENVTL. CONSERV. LAW § 15-2121 well in excess of the cost of "interest, maintenance and depreciation" authorized by the FPA.

FERC agreed that pursuant to the FPA, the District was required to obtain approval of the charges apportioned to Albany Engineering and others for interest, maintenance and depreciation of the Conklingville Dam from FERC.  FERC disagreed with Albany Engineering's contention that the District was prohibited from assessing additional charges for its operational costs. However, on appeal, the D.C. Circuit reversed FERC's administrative determination, holding that federal law preempts states from exacting compensation from downstream hydropower plants that receive "headwater benefits" from upstream dam operators.  *Albany Eng'g Corp. v. Fed. Energy Regulatory Comm'n*, 548 F. 3d 1070, 1076-77 (D.C. Cir. 2008).  Indeed, the Circuit court held that FPA §10(f) must be understood to "preempt[] **all** state headwater benefits assessments." *Id.* at 1079 (emphasis in original).

National Grid filed the present action primarily on the basis of the D.C. Circuit's decision in *Albany Engineering.*  The company asserts that the District is preempted from apportioning and assessing costs to hydroelectric projects licensed by FERC or "parcels that are or would be subject to FERC's oversight as the District characterizes such parcels as purportedly

6

'developable hydroelectric sites.'"  The original complaint alleged five causes of action including a request for a preliminary injunction.  This Court previously denied National Grid's motion for a preliminary injunction and dismissed National Grid's claims against the New York Department of Conservation ("DEC").  Subsequently, National Grid filed an amended complaint which also contains five causes of action and also includes claims against DEC.

The first cause of action seeks a declaratory judgment that the FPA preempts regulation of navigable waterways except for irrigation and municipal use, and thereby preempts all of the District's operations in the Hudson River and Black River basins including collection of Annual Assessments against National Grid.  The second cause of action also seeks declaratory relief in the form of a judgment estopping the District from arguing it does not assess National Grid's parcels as hydroelectric sites and then limiting the District's authority to make headwater benefit assessments on these parcels pursuant to FPA § 10(f).  The third cause of action also seeks a declaratory judgment that the District's apportionment and assessment scheme, together with its alleged failure to comply with the FPA violates the Equal Protection clause of the Fourteenth Amendment insofar as it treats National Grid's property differently from other similarly situated parcels.  The fourth cause of action seeks a declaration that the District's permit system final rules are preempted by the FPA.  Finally, in its fifth cause of action, National Grid claims the assessments and the apportionment methodology used by the District constitutes an unconstitutional taking under both the federal and New York State constitutions.

Subsequent to the filing of the amended complaint, this Court granted a motion to intervene by SPC, an interest group formed in May 2009 to respond to actions taken by the District and DEC regarding proposed changes to the permit system enjoyed for decades by both "front lot" and "back lot" property owners as well as business and recreational users of Great

Sacandaga Lake.  Although National Grid opposed SPC's motion to intervene, the Court found

that National Grid and SPC had sufficiently divergent interests in this case to warrant

intervention as of right.

### III.    DISCUSSION

A.    Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  Substantive

law determines which facts are material; that is, which facts might affect the outcome of the suit

under the governing law.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986).

Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in

dispute.  *See id.*  The moving party bears the initial burden of establishing that there is no genuine

issue of material fact to be decided.  *See Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986).  With

respect to any issue on which the moving party does not bear the burden of proof, it may meet its

burden on summary judgment by showing that there is an absence of evidence to support the

nonmoving party's case.  *See id.* at 325.  Once the movant meets this initial burden, the

nonmoving party must demonstrate that there is a genuine unresolved issue for trial.  *See* Fed. R.

Civ. P. 56(e).

Although the trial court must resolve all ambiguities and draw all inferences in favor of

that party against whom summary judgment is sought, *see Ramseur v. Chase Manhattan Bank*,

865 F.2d 460, 465 (2d Cir. 1989); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249

(2d Cir. 1985), the motion will not be defeated by a non-movant who raises merely "metaphysical

doubt" concerning the facts or who only offers conjecture or surmise.  *See Delaware & H. R. Co.*

*v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)).  Indeed, the nonmoving party's opposition

may not rest on mere denials of the moving party's pleading, but "must set forth specific facts

showing there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e).  The standard for granting

summary judgment mirrors the directed verdict standard under Rule 50(a) which requires the

court to grant a directed verdict where there can be but one reasonable conclusion.  *See Anderson,*

477 U.S. at 250.  "It is a gratuitous cruelty to parties and their witnesses to put them through the

ordeal of a trial when the outcome is foreordained." *See Mason v. Continental Ill. Nat'l Bank*,

704 F.2d 361, 367 (7th Cir. 1983).  It is with these considerations in mind that the Court

addresses the District's motion for summary judgment.

B.      Claims Based on the FPA and Preemption

National Grid has assembled an impressive record in opposition to the District's moving

papers herein by submitting voluminous affidavits, public records, historical reports, assessment

records, contracts, photographs and maps in an attempt to demonstrate the inequity created by the

District's antiquated assessment methodology.  It seems obvious that in the over eighty years

since the District first began assessing properties along the Hudson and Black Rivers that other

property owners, including both commercial and residential parcels, are now enjoying the benefit

of the District's efforts to maintain the Conklingville Dam, which in turn contains the Great

Sacandaga Lake where countless residential homeowners now own and maintain lakefront

property.  However, the District has steadfastly refused to undertake reassessment or

reapportionment despite having commissioned at least one consulting firm to perform a

regulation study which revealed that there are several categories of economically determinable

benefits which could or should be apportioned in the District's budget but which are not currently

included.  By all accounts, it appears to the Court that the District **agrees** that a reapportionment

9

should and must be done since it signed an Offer of Settlement before FERC in 2002 that included a provision requiring that a reapportionment be completed.

Nevertheless, in spite of the egregious circumstances of National Grid's continuing obligation to pay millions of dollars in assessments to the District, one factor has not changed since this Court last reviewed this case in connection with the merits of National Grid's FPA and federal preemption claims. As this Court previously held that the FPA § 10(f), applies only to "licensed" or "unlicensed" hydroelectric power projects. *Albany Engineering* stands for the proposition that the District is preempted by the FPA from apportioning its operation costs to other FERC licensees, such as Albany Engineering, an owner and operator of a hydroelectric project downstream of the Conklingville Dam. Contrary to National Grid's contentions, nothing in the D.C. Circuit's decision held that the District, a state regulatory agency is prohibited from collecting assessments under state law from property owners along the Hudson River and Great Sacandaga Lake, even if these waterways are otherwise regulated by federal law and FERC for other purposes. In the absence of any evidence that National Grid is a licensed or unlicensed hydroelectric power producer, its factual submissions on this motion - at least insofar as its claims based on preemption under the FPA - are largely irrelevant.

The complaint also alleges that most, if not all, of the District's directives and operations are preempted by the §27 of the FPA which - according to National Grid - reserves to the states only the power to regulate navigable waterways for purposes of irrigation or municipal use. *See* 16 U.S.C. § 821. National Grid relies on the Supreme Court's decision in *First Iowa Hydro-Elec. Co-op. v. Fed. Energy Regulatory Comm'n*, 328 U.S. 152 (1946), and its progeny for the proposition that FERC has total regulatory authority over the nation's navigable waters outside the areas of irrigation and municipal use. It is the position of National Grid that since the

10

District's assessment and apportionment methodology, as applied to mere property owners such as National Grid, does not appear to contemplate irrigation or municipal use, it is preempted by the FPA and FERC's exclusive authority to regulate under said statute.

The Court disagrees.  It is very clear that § 27 of the FPA was devised as a scheme to divide state and federal jurisdiction "over hydroelectric projects." *California v. Fed. Energy Regulatory Comm'n*, 495 U.S. 490, 499 (1990).  There is simply nothing in *First Iowa* or any other case cited by National Grid which prohibits a state agency from regulating, taxing or assessing non hydroelectric projects such as the private parcels owned by National Grid.  Based thereupon the Court finds that the first, second, and fourth causes of action in the amended complaint which assert claims based on preemption and the FPA must be dismissed.

C.    Abstention

The District urges this Court to abstain from exercising jurisdiction over National Grid's remaining constitutional claims on the ground that these identical claims are already being litigated in 20 actions which have been filed for the last 10 years in New York State Supreme Court and in some cases these actions have already progressed well into the discovery and dispositive motion phases of litigation.[3]  The Court notes that abstention from the exercise of federal jurisdiction is the exception, not the rule.  "The doctrine of abstention, under which a district court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy

---

[3]

In Hamilton County Supreme Court, the parties' cross-motions for summary judgment were denied in 2006 with the right to renew upon completion of discovery.  Various depositions have yet to be completed but hundreds of thousands of pages of documents have been reviewed, over 45,000 pages have been produced in discovery, 8,541 pages of documents have been turned over in response to Freedom of Information requests, and two sets of interrogatories have been served exchanged.  Presently pending in Supreme Court is a motion by National Grid to **consolidate** the various litigations.

11

properly before it.  Abdication of the obligation to decide cases can be justified under this

doctrine only in the exceptional circumstances where the order to the parties to repair to the state

court would clearly serve an important countervailing interest." *County of Allegheny v. Frank*

*Mashuda Co.*, 360 U.S. 185, 188-189 (1959).

In 1976 the Supreme Court crafted a new exceptional-circumstances test for

determining-absent any of the three accepted bases for federal-court abstention - whether federal

litigation should be stayed out of deference to parallel litigation commenced in state court

*Arkwright-Boston Mfrs Mut. Ins. Co. v. City of New York,* 762 F.2d 205, 207 (2d Cir. 1985)

(citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-20 (1976).

Seven years later in *Moses H. Cone Hospital v. Mercury Construction Corp*., 460 U.S. 1, 13-19

(1983), the Court reaffirmed and elaborated on this exceptional-circumstances test.  *See id.*  To

determine whether *Colorado River* abstention is appropriate, a district court must weigh six

factors, with the "balance heavily weighted in favor of the exercise of jurisdiction."  *Moses H.*

*Cone Memorial Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 16; *Bethlehem Contracting, Co. v.*

*Lehrer/McGovern, Inc*., 800 F.2d 325, 327 (2d Cir.1986).  The four original *Colorado River*

factors include: (1) the assumption of jurisdiction by either court over any res or property; (2) the

inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; and (4) the order in

which jurisdiction was obtained.  424 U.S. at 817-20.  The Court later added two factors in *Cone*

*Memorial Hospital*: (5) whether state or federal law supplies the rule of decision, and (6) whether

the state court proceeding will adequately protect the rights of the party seeking to invoke federal

jurisdiction.  460 U.S. at 13-19.  *Colorado River* abstention "rest[s] on considerations of wise

judicial administration, giving regard to conservation of judicial resources and comprehensive

disposition of litigation." *Colorado River*, 424 U.S. at 817.  The decision "does not rest on a

mechanical checklist, but on a careful balancing of the important factors as they apply in a given case." *Arkwright-Boston Mfrs Mut. Ins. Co. v. City of New York*, 762 F.2d at 210.

The Court notes that the first two *Colorado River* factors are not applicable in this case. There is no property or res at issue and the federal forum is not inconvenient.  Insofar as the third factor, the avoidance of piecemeal litigation, the Court observes that some of the state court actions have been pending since 2000, discovery has been underway and National Grid has moved to **consolidate** the various litgations and compel further discovery.  Regarding the fourth factor, primary jurisdiction has clearly been long obtained in state court on National Grid's constitutional claims.  In connection with the fifth factor, both state and federal law will govern National Grid's remaining claims since they are raised under both the New York State and United States constitutions.  However, the Court notes that it is of peculiar interest to New York how the District - a New York public benefit corporation - should resolve operation and management of its outdated apportionment scheme under a New York State statute N.Y. ENVTL. CONSERV. LAW § 15-2121. National Grid has not submitted any evidence on this motion in support of the sixth factor suggesting that the state courts have not or will not adequately protect its rights in any of these 20 pending proceedings.

As in *Colorado River*, the danger of piecemeal litigation is the paramount consideration in this case:

> If [this Court] refuses to abstain, it will force defendants to defend this complex litigation on two fronts. Further, inconsistent disposition of these claims between two concurrent forums would breed additional litigation on assertions of claim and issue preclusion. This could burden the parties for years to come. "[T]he existence of such concurrent proceedings creates the serious potential for spawning an unseemly and destructive race to see which forum can resolve the same issues first [which would be] prejudicial, to say the least, to the possibility of reasoned decisionmaking by either forum.

13

*Id.* at 211 (citing *Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 568 (1983)).

"Maintaining virtually identical suits in two forums under these circumstances would waste judicial resources and invite duplicative effort.  Plainly, avoidance of piecemeal litigation is best served by leaving these suits in the state court."  *Id.*  Analysis of the several factors here requires this Court to find that defendants opposing the exercise of federal jurisdiction have sustained their burden of persuasion.  As was the case in *Arkwright-Boston Mfrs. Mut. Ins.*, this Court is "persuaded that this litigation presents those exceptional circumstances where prudent administration of judicial resources and comprehensive disposition of litigation counsels a federal court that has concurrent jurisdiction with a state court to abstain from exercising its jurisdiction."  762 F.2d at 212.

Having found that abstention is appropriate under the "exceptional circumstances" standard set forth in Colorado River, the Court finds alternatively that abstention is also warranted under the more lenient standard of review discussed in *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) ("Distinct features of the Declaratory Judgment Act, we believe, justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the "exceptional circumstances" test of *Colorado River* and *Moses H. Cone*"), because this action is brought pursuant to the Declaratory Judgment Act.  Indeed, the third cause of action in National Grid's amended complaint, which asserts a denial of equal protection seeks a declaratory judgment. Persual of the fifth cause of action, while not titled as one seeking declaratory relief is written in the same way as the third cause of action which does seek a declaration.  Moreover, in the wherefore clause, each of the paragraphs demands a "judgment" declaring specific relief.  In short, the entire amended complaint seeks various declaratory

14

judgments.  Thus, based on the more discretionary standard outlined in *Wilton*, abstention is also warranted due to the indisputable existence of concurrent identical state court litigation.

## IV.    CONCLUSION

Based upon the foregoing, it is hereby

ORDERED that the motion for summary judgment filed by the District (Dkt # 47) is GRANTED in part; and it is further

ORDERED that the first, second and fourth causes of action in the amended complaint are dismissed with prejudice in their entirety; and it is further

ORDERED that the Court abstains form exercising its jurisdiction in connection with the third and fifth causes of action in the amended complaint and thereby dismisses these claims without prejudice; and it is further

ORDERED that in view of the Court's decision granting the District's motion for summary judgment in part and dismissing the balance of the amended complaint without prejudice, the District's motion to stay discovery (Dkt # 75) and the cross-motion to adjourn discovery (Dkt # 77) filed by National Grid are DENIED as moot.

IT IS SO ORDERED.

Date:    September 29, 2010
         Syracuse, New York

Norman A. Mordue
Chief United States District Court Judge

15